May it please the court, my name is Keith Wren. I represent the plaintiff in this case, Mr. Albert Rinchuso. The first issue in this case is whether a plaintiff in an employment discrimination case who has alleged his case in the complaint as a case proven by comparator evidence must amend his complaint in order to avoid summary judgment by using direct evidence of discrimination. And the answer to that question very clearly is no. He does not have to amend his complaint. Federal Rule of Civil Procedure 8A2 is very clear. It says that the complaint requires only a short and plain statement of the claim showing that the pleader is entitled to relief. The seminal case interpreting that for the purposes of this case is a rather old case from 1979. The Oglala Sioux Tribe of Indians v. Andrus. In that case, this court said that the complaint pursuant to Rule 8A2 requires that it only give the opposing party fair notice of the claim and a general indication of the type of litigation involved. It went on further to say that the ancient doctrine of the theory of the pleadings has been abolished. Later, the United States Supreme Court handed down the Sferkovich case, which is directly on point with this case. In Sferkovich, the United States Supreme Court struck down a requirement by the Second Circuit that a plaintiff in an employment discrimination case had to allege a prima facie case of employment discrimination using the McDonnell-Douglas framework. In the Sferkovich case, the Supreme Court said that the plaintiff's complaint was sufficient because it detailed the events leading to his termination, provided relevant dates, and included the names and nationalities of at least some of the relevant persons involved. In other words, it gave fair notice to the opposing party of the claim that was being presented against it. And the plaintiff's complaint in this case does exactly the same thing. Certainly, the information presented at the stage of the proceedings where the complaint was filed was that it was believed that there was a comparator. So the theory that's alleged in the complaint is a theory of disparate treatment. Is that accurate? Exactly. It's a disparate treatment claim. Well, it is an employment discrimination claim, a claim of treatment. But the theory of proof of discrimination is that the plaintiff was treated in a disparate manner from females. The theory of the way that his claim of gender discrimination was to be proved, as it was thought at that time, was by disparate treatment using a comparator. It was still, at its heart, a claim of gender-based discrimination under the Arkansas Civil Rights Act, which was then later removed to the district court. And I think it's very important to point out, Your Honors, that although the Cverkovic case was decided at the motion-to-dismiss phase, it has equal application at all phases of the litigation. Beginning with the Oglala Sioux Indian case, that case dealt with arguments that were raised in a post-trial brief. They were legal arguments. The court said that the issue was the same, but the legal arguments that were raised were not raised until a post-trial brief, and the plaintiff in that case then requested that the court allow the pleadings to be amended to conform to the evidence, which was not allowed and then was subsequently reversed by this court. Also, I have a point of additional authority on that that is not cited in the brief, but is also a case called Johnson v. City of Shelby, Mississippi, a United States Supreme Court case, 574 U.S. 10, a 2014 case, a case where the United States Supreme Court reversed the Fifth Circuit's holding that summary judgment was appropriate because the plaintiff did not specifically plead Section 1983 in a civil rights litigation case. Well, isn't it a little different to require a specific pleading and then entering a summary judgment based on that theory being reversed on that than a case in which you go through the process where discovery is done, the date to amend the complaint is finished, you've investigated and discovered on a single theory, the single theory is disparate impact as a result of or disparate treatment as a result of the comparator, and then all of a sudden you get on a different horse and start riding into trial? I mean, isn't that a different animal? Well, I'd like to point out a few things, Your Honor. First, if that argument is taken to its logical conclusion … Well, I mean, you know how to amend a complaint, right? Yes, Your Honor, I do. So why wasn't that done? Well, because it wasn't necessary to put the opposing party on notice of the claim. The claim was one of gender discrimination. As long as they have a fair notice of what the claim is, then that is what the claim is. How it ultimately is proven works out in discovery. And in this case, they cannot claim prejudice because all of the direct evidence of discrimination that I've cited in the briefs to the lower court and here came from them. They knew all of the information at the time that it occurred, which was well, well before the complaint was even filed. I was not privy to that information until the discovery was done. Counsel, you cited a Supreme Court case a few moments ago. Shelby, was that the name? It was Johnson v. City of Shelby, Mississippi. Was that in your brief? I didn't know. No, Your Honor. Would you provide the court with a 28-J supplemental authority memo on that case? Yes, Your Honor. But getting back to my main point, if the defendant's argument is taken to its logical conclusion, as we all know, in the federal system, the district courts set out a scheduling order. And in this particular case, the scheduling order said that the deadline for amending the pleadings was in January or February of 2018. However, the discovery deadline didn't run until after that date. And the discovery of depositions of the Human Resources Director and the Human Resources Investigator did not take place until March of 2018 after that deadline had run. So under the defendant's theory of the case, if in that deposition taken after the deadline for amending the pleadings has run, she admits that I fired Mr. Rincuso because he's a man. You don't have a comparator. We get off scot-free. None of us would agree that that is justice or that it's allowed under the rules. Well, that's not what happened. Well, it isn't what happened, but I'm merely making it. It would be an abuse of discretion if you didn't allow amendment under those circumstances, wouldn't it? I mean, you know, first of all, in almost all scheduling orders, like sort of discovery is done before the amendment to complaints is required, right? Usually, at least in my court when I was a trial judge, I always said you can amend after the completion of discovery. But if you set the discovery deadline after the motion to amend deadline, you know, the court has discretion to allow amendment. And if you've got newly discovered evidence that supports a theory, it would be an abuse of discretion to not allow the amendment on the basis that, well, you know, the deadline had passed. And you'd say, well, I didn't discover it until after the deadline, right? I mean, that's an odd discovery. I mean, maybe it's not. I mean, I only know my own orders, I guess. But it strikes me as somewhat odd that you would have the discovery deadline after the motion to amend deadline. Well, Your Honor, I think that the rule is that as long as they're on notice of the claim, how it gets proven is irrelevant. Now, if you're making a new claim, if you're saying that, you know, for example, the case that is cited by the defendants, the Sumi Long case, that was a case where 10 years of litigation went on. And after a motion for summary judgment was filed in a disparate treatment case, then they want to amend the complaint to allege a disparate impact case, which are two different claims completely. One has to do with the subjective mental intent of the decision makers. And the other, a disparate impact claim has to do with a facially neutral policy that has discriminatory effect. And so in that case, amending the complaint at that time certainly shouldn't be allowed because it clearly prejudges the defendant. When you have to talk about, you know, two levels of proof or two different elements of a claim. And that's not what's going on here. The McDonnell-Douglas framework was put in place so that a plaintiff without direct evidence of discrimination could still have their day in court if they could draw an inference that based upon these factors, they could have their day in court and not be dismissed on summary judgment. Here, the evidence worked out that there was far more direct evidence than comparatory evidence. But the claim is the very same claim. And based on that, the plaintiff should have his day in court. Well, then, are you arguing then that your similarly situated claim was subsumed within your direct evidence claim? Your Honor, I'm afraid I don't completely understand the question. But I would... Well, that it was incorporated or that inherent in your direct evidence claim was the claim of similarly situated? Well, I... In other words, what would you have alleged in your amended complaint had you been allowed to amend it? Well, what would have been done and would have been allowed under the rules at the very beginning of the claim was I could have made a very general statement setting out the bare-bones necessities that my client was a male, that he was discriminated against, that the people who did it were the two human resources investigator and supervisor, and here are the relevant dates. You might run into an Iqbal or Twomley problem at that point. I don't think so, Your Honor, not based upon the Sverkovich case. Which precedes, doesn't it? It does. But as I've stated in my brief, there was a later case, I want to say Hamilton, that the Eighth Circuit gave that says that those two cases, Twomley and the Iqbal case, do not create a heightened pleading standard for employment discrimination claims. At this point, I would like to reserve the rest of my time. Thank you, Mr. Wren. Ms. Logue? May it please the Court. Appellant admits in this case to waiting until he was responding to Brookshire's motion for summary judgment before he abandoned the allegations in his complaint. Counsel, would you raise that? There's a button to your right there. If you'll raise it up a little bit, I think we can hear you a little better. Thank you. My hand's fairly tall. Appellant admits in this case to waiting until he was responding to Brookshire's motion for summary judgment before he abandoned the allegations in his complaint. He admits it in his response to the motion for summary judgment. He admits it in his appellate briefing. And his counsel admitted it today in his argument. Now, is it accurate that counsel is actually abandoning what he originally alleged? His position before us seems to be that he still has the same allegation. He just now believes he's proving it with different evidence. Well, in the complaint, the plaintiff was very specific that his case was a comparator case. There was an employee who was similarly situated to Mr. Ranchuso, who he believed was treated differently from him. Through the discovery process and preparing the case for summary judgment, that was always the understanding that that's what the case was about. Actually, in deposition, Mr. Ranchuso was asked what his case was about. And he agreed that his claim was based on him being treated differently than a female employee. When the appellee argued on summary judgment that he lacked any proof of that comparator claim, the appellant didn't even respond to that argument. At that point, he completely switched to an entirely new lawsuit, arguing that he had direct evidence of discrimination. Even in his appellate brief, he does not answer or respond. Why is a claim of direct evidence a different lawsuit when evidence, whether it's direct or whether it's indirect or inferential, is still evidence to establish a proposition? The law that would be used and the elements that would be used to support the two different claims is completely different. If you are looking at a claim that another employee has been similarly situated, of course you're looking to see if they are, in fact, similarly situated. They have the same supervisor. If the conduct that they were disciplined for was the same, they have the same conduct history. It's a very different set of facts that are used to prove that kind of case, which is what was focused on in discovery. Also, in the summary judgment motion that was filed. As opposed to now, in response to summary judgment, the plaintiff has alleged an entirely new case and completely abandoned his original theory of the case, which was that there was a single female employee who was treated differently than he had been. So, appellant waited until after the deadline to amend his complaint had passed. He waited until after the discovery cutoff had passed. And he waited until after the motions deadline had passed. And then for the first time, in response to a motion that had already been fully briefed on the allegation that was made in the complaint, apparently the plaintiff realized that he couldn't actually prove his comparator case. That's when he attempted to allege an entirely new case. All right. Let's assume that that's all totally okay. Let's say gender discrimination is gender discrimination. He was terminated for his gender, and that's the way it is, or that's what the allegation is. You can prove it either way. Now, let's look at the points that he's essentially raised as direct evidence. Because I've got another question, and that is, as I took what he says is there, he claims that he was never warned about touching other employees in 2014. He claims that Levingston consciously made a decision not to interview males and therefore preferred females during the course of the investigation. That Brookshire failed to find video evidence that there was a touching of coworkers or misusing of his work computer, right? And then fourth, that whatever they did on their forensics on the computers, they found that he'd been at these kind of dating websites but never found any pornography. And that those things, standing alone, that's enough evidence to give rise to a direct, that's sufficient direct evidence to present a justiciable question for the jury. Do you believe that's right? I don't. Why not? There's two reasons. One is if you look at the Griffith case, which is the one that the plaintiff relies on, that case describes direct evidence and says, even under the Griffith standard, there must be a specific link between the discriminatory intent and the adverse employment decision, and the direct evidence must clearly point to an illegal motive, which is not the kind of evidence that the plaintiff even submits that he calls direct evidence. In fact, when you look a little further down in Griffith and continue reading, the court actually said that kind of evidence is not enough. In that case, looking at the facts, the court said there was no direct evidence because the plaintiff presented no evidence that any decision maker ever made a negative remark about plaintiff's race. And, of course, there is no proof here that anyone ever made a negative remark about Mr. Ranchuso's gender. Also, the direct evidence that Mr. Ranchuso submits in his new version of the case is really not even relevant to the question at hand in an employment discrimination case. What he's really saying is, one, he thinks he's innocent of what he's been accused of, and, two, that he thinks Berkshire could have done a better job of investigating the complaints that were against him. But if you look at the McCullough case, and that's 559 F3D 855, this court was clear about two things. One, that the critical inquiry in discrimination cases is not whether the employee actually engaged in the conduct for which he was terminated, but whether the employer, in good faith, believed that the employee was guilty of the conduct that justified his discharge. Mr. Ranchuso hasn't pointed to anything in the record to show that the employees who investigated the complaints that were made against him had any sort of bad faith motive in his termination. Well, counsel, what you give would have been a nice explanation to see in the dismissal, but the district court dismissed this essentially on the basis that there was a change in theory of the case and that the evidence attempted to be offered was that you basically have an attempt to amend through a response to summary judgment. Why wouldn't it be appropriate to send this back and let it go a little further along? Well, I don't think that is necessary. Of course, the court could order that, and that could be the court's decision in this case. But there is a comment in the district court's opinion where he actually does address the merits, and he says he finds, even if it had been timely, he finds the new version of the case to be wholly without merit. Of course, this case can affirm on any basis that it finds, including finding like he did. So those comments were not included in the order? They are in the order. In the order, he does say it's wholly without merit. Even beyond that, if you look at the evidence that Mr. Ranchuso points to, there's only one point at all that there would be anything that might be even tangentially involved with gender, right? And that is, didn't interview the two male witnesses. There was an explanation given as to why those witnesses weren't interviewed, right? And at the end of that, there is no other evidence that I've been able to see in this record where they found or pointed to anything that had anything to do with, that was specifically tied to gender, right? I agree, Your Honor. And actually, I said there were two reasons why it was not direct evidence that was relevant to the question in the case, even if you allow that theory of the case to move forward. And the second is also from the McCulloch case, that shortcomings in an investigation alone do not support an inference of discrimination. So we're getting to the merits of the claim that was never raised. Correct, Your Honor. But there was a comment on it by the judge in his opinion, right? There was a comment. I believe it was in about three lines from the end of the opinion. Right. And the discrimination theory appears wholly without merit and merely an attempt. But to follow up on what Chief Judge Smith asked, that was going to be my question. What would have been the great harm had the district court granted the motion to amend? Obviously, it would have given you a chance to respond to the amended complaint, I guess, to supplement your earlier motion for summary judgment. Well, Your Honor, there was no motion to amend. All that there was was the response to the motion for summary judgment. And that's where he, for the first time, alleged his new theory of the case. And you'll see that the district court cited a couple of opinions, granted not from the Eighth Circuit. And we also cited several similar cases in our briefs where courts have said that waiting until summary judgment is inappropriate. Waiting until the response to summary judgment to change the theory of your case is inappropriate. Well, that's true. But I'm theorizing again, if the district court had granted the motion to amend, you would have been hard-pressed to defend, to attack the district court's decision. Well, of course, I'm not attacking the district court's decision. No, no, no. I mean, had the district court granted the motion to amend, you would have screamed bloody murder and all that. But you probably would not have prevailed. Well, I think we would have. And then we would have been discussing on the merits of his now-raised claim. If that had happened, you might be correct. Of course, that's not what happened here. And if it had become an issue of whether the court should amend or not, of course, we would have had the opportunity to continue arguing the prejudice that would occur to the defendant if we were to start over with a whole entirely new case when we were already to the summary judgment stage. And, Judge Erickson, I also wanted to point out to you, from McCullough, in response to your question, the court in that case also said a business judgment to limit interviews is not evidence that the investigators purposely ignored relevant information or truncated the inquiry because of a bias against men. Of course, this court has recognized multiple times that it does not sit as a super-personnel authority over businesses when they use their business judgment. In effect, are you making a no-harm, no-fault argument? I think to the extent that we're arguing that there is no merits to the direct discrimination claim, I think that would be a good way to characterize that argument, which is that even if the district court got it wrong and the plaintiff should have been allowed to amend his case and start over with an entirely new case at the summary judgment stage, the case that he attempted to amend and create is also not something that would have survived summary judgment. So, Brookshire respectfully requests that this court affirm the grant of summary judgment below. If there are no further questions. Thank you, Ms. Long. Mr. Wren, your rebuttal. Your Honors, I believe that the statement that the district court ruled that the direct discrimination claims had no merit is taken out of context. If you read, it's on page five of the opinions of the addendum, page five. It says, Rencuso's direct discrimination theory appears wholly without merit and merely an attempt to avoid summary judgment. And then he says, for these reasons, Rencuso's direct discrimination claim is not considered. So I think what he's saying there is he's not going to allow it to be considered for the reasons that we've previously discussed. I would like to point out a few things. I think that the defendant's position on what it takes to present a direct evidence case of discrimination is too narrow. According to their theory, you have to have the smoking gun where you have someone making an admission. And that's simply not the case. What really it boils down to is, is the defendant entitled to the business judgment rule? And the business judgment rule, a business is entitled to that if they make a creditability decision reasonably and in good faith. And they don't have that here. What they've done is chosen to be willfully blind. Their investigator, Ms. Levingston, when I asked her in her deposition, did you interview any of the men in the department about what the females were saying? And she said, no. And I said, why? And her answer was, because I don't think they had any relevant information. However, those same employees in affidavits in opposition to summary judgment said that my client didn't do what he said he did, what they claimed that he did. So this is not a case of weighing the evidence in good faith. It's to be willfully blind of the evidence and then say, well, see, all the evidence proves our theory. And the same is true for the video. The female accusers of my client claimed that he was touching them every day for two years in a small pharmacy where there's video cameras. In his interview with the investigator, he says, look at the video. You can see that I haven't done any of these things that are being claimed. The store manager thought the investigator actually did look at the video. But she claimed that she didn't. She said that she never looked at it, nor did she ever preserve it. However, she says that if she had observed this evidence of it actually happening, that she definitely would have preserved it. Another example of her simply being willfully blind. Also, the after-the-fact claim that my client had been warned about previous conduct where there's evidence in the record when asked by the Department of Workforce Services, had he ever had a previous warning, the unequivocal answer was no. Thank you, Your Honors. Thank you, Mr. Moran. Thank you also, Ms. Loeb. Thank you for providing discussion with the court today and argument in the briefing that you've supplied the court to help resolve the issues here. We'll take your case under advisement. Thank you.